FILED
2012 Sep-20  AM 10:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **FRANCES MELINDA CROWDER**, | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:11-CV-02478-KOB** |
| | ) | |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of the Social**, | ) | |
| **Security Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

On March 27, 2009, the claimant, Frances Crowder, filed an application for disability insurance benefits under Title II of the Social Security Act. The claimant alleged disability commencing on February 9, 2009, because of bipolar disorder and panic disorder without agoraphobia. (R. 57). The Commissioner denied the claim, and the claimant filed a timely request for a hearing before an Administrative Law Judge, which the ALJ held on May 5, 2010. (R. 27, 80-81). In a decision dated July 14, 2010, the ALJ found the claimant not disabled as defined by the Social Security Act and, thus, ineligible for disability insurance benefits or supplemental security income. On June 23, 2011, the Appeals Council refused to grant review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1-3, 16). The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

1

## II. ISSUE PRESENTED

Whether the ALJ failed to consider the cyclical nature of the claimant's mental impairments.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 401 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record that support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence that conflicts with the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). The court must scrutinize the totality of the record "to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." To

make this determination the Commissioner employs a five-step, sequential evaluation process.

*See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments
> set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative answer
> to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[1]

To establish disability, the claimant has the burden of proving the first three steps: namely

that (1) she is not engaged in substantial gainful activity; (2) she has a severe impairment or

combination of impairments; and (3) her impairment or impairments meet or exceed the criteria

in the Listings found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant cannot prove that she

has a listed impairment, she must prove alternatively that she is unable to perform her previous

work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *see also Lucas v. Sullivan*, 918 F.2d

1567, 1571 (11th Cir. 1990). Once the claimant shows that she cannot perform her previous

work, the burden shifts to the Commissioner "to show the existence of other jobs in the national

economy which, given the claimant's impairments, the claimant can perform." *Jones v. Apfel*,

190 F.3d at 1228.

---

[1]*McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) was a supplemental security income case
(SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are
appropriately cited as authority in Title XVI cases.  *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir.
Unit A 1981).

Substantial evidence does not exist when a decision focuses on one aspect of the evidence while ignoring other contrary evidence. *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). A reviewing court must scrutinize the entire record "to determine the reasonableness of the decision reached." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1989). However, "credibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). A court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *See Dyer v. Barhart*, 395 F.3d 1206, 1212 (11th Cir. 2005).

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1225-56 (11th Cir. 2002); 20 C.F.R. § 404.1529.

## V. FACTS

The claimant has a college education, having a masters degree in both social work and education; she was thirty-nine years old at the time of the hearing. Her past work experience includes employment as a kindergarten teacher and social worker. The claimant's alleged disabilities stem from bipolar disorder, irritable bowel syndrome (IBS), migraine headaches, and obesity. (R. 15, 32, 51-52).

4

*Physical Limitations*

On February 25, 2010, the claimant visited Dr. Kelli Grinder, an examining physician, at Norwood Clinic. (R. 265). Dr. Grinder noted that the claimant complained of heartburn, acid reflux, and a sour taste in her mouth. Dr. Grinder diagnosed the claimant with hypertension and IBS. (R. 267). On May 5, 2010, the claimant visited Dr. Linda Thompson, an examining physician, at Brookwood Medical Center. (R. 276). Dr. Thompson diagnosed the claimant with abdominal pain and described the claimant as overweight. Dr. Thompson noted that the claimant has a normal appendix and no abnormalities of the bowels. (R. 276).

*Mental Limitations*

On Decemeber 2, 2004, the claimant visited Dr. John Holcombe at UAB Health Center Hueytown. (R. 200). Dr. Holcombe diagnosed the claimant with acute depression with anxiety and panic non-suicidal escalating. (R. 200). He wrote the claimant a note excusing her from work for the rest of week. At the time, the claimant taught a 5th grade class at an elementary school and felt considerable stress related to her job. Dr. Holcombe stated that the claimant would have a follow-up visit with her psychiatrist, Dr. Stone, though the record contains no records of the follow-up visit.

On August 5, 2008, the claimant visited Eastside Mental Health Center, where she saw Nancy Mitchell (credentials unspecified). (R. 209). Ms. Mitchell's status exam shows the following observations of the claimant: appropriate appearance; cooperative demeanor; normal speech; euthymic mood; good memory; and good insight. (R. 209). On February 4, 2009, the claimant visited Dr. Timothy Stone, an examining psychiatrist, at Eastside Mental Health Center. (R. 208). Dr. Stone diagnosed the claimant with bipolar disorder and panic disorder without

agoraphobia. (R. 208).

On June 26, 2009, at the request of the ALJ, the claimant received a consultative

examination from Dr. John Neville, a psychologist. (R. 215). Dr. Neville diagnosed the claimant

with bipolar disorder and panic disorder without agoraphobia. (R. 217). Dr. Neville found that

the claimant's ability to respond to coworkers would decline when her mood reaches more

extreme states. He found that the claimant's ability to cope with ordinary work pressures would

also vary with the cycles of her illness. (R. 217-18). Dr. Neville stated that the claimant does

housework, drives, but does not have any recreational activities; Dr. Neville found the claimant's

prognosis over the next six to twelve months fair. (R. 217). Dr. Neville recommended psychiatric

treatment and psychotherapy for the claimant, and he found her ability to carry out instructions

mildly to moderately impaired by her mood disorder. (R. 217).

On July 10, 2009, Dr. Robert Estock, a non-examining state psychiatrist, completed a

psychiatric review technique regarding the claimant. (R. 219).  Dr. Estock recounted the mental

health history of the claimant described above; he then opined that the claimant had mental

limitations but should be expected to function in at least an unskilled environment. (R. 231). Dr.

Estock also completed a mental residual functional capacity assessment. (R. 233). Dr. Estock

found that the claimant had no marked limitations related to her mental impairments. (R. 233).

Dr. Estock concluded that the claimant can perform simple tasks without significant restrictions;

however, the claimant requires a flexible schedule in a spaced work setting with all allowable

rest breaks. Dr. Estock found that the claimant's contact with the public should be casual and

limited and her supervision should be tactful and supportive. Lastly, Dr. Estock stated that

changes in the claimant's work setting or routine should be introduced gradually. (R. 235).

From June, 2009 to January 14, 2010, the claimant visited Eastside Mental Health Center seven times, where the record reflects the diagnosis of bipolar disorder ( June 6, 2009; June 9, 2009; July 14, 2009; August 6, 2009; September 10, 2009; November 2, 2009; and January 14, 2009).  On September 10, 2009, Eastside Mental Health Center's record reflect that the claimant had a global assessment function (GAF) level of seventy, indicating mild limitations in functionality. (R. 238). The records indicated that the claimant has a long history of depression and anxiety characterized by increased sleep; increased appetite; decreased energy; crying spells; depressed mood; and panic attacks. Also, the records indicated that the claimant had feelings of hopelessness and fatigue. The records note that the claimant has never needed hospitalization for these symptoms. (R. 238). On November 11, 2009, Eastside Mental Health Center records indicated that the claimant described her depression as mild. The claimant stated concern over the change in seasons, because she gets depressed when the days shorten. The records indicated a normal mental status with no manic symptoms, panic attacks, or side effects from medication. (R. 244).

*The ALJ Hearing*

After a denial of the claimant's request for disability insurance benefits by the Commissioner, the claimant received a  hearing before the ALJ on May 5, 2010. (R. 27, 80-81). At the hearing, the claimant testified that she was able to drive, but crying spells limit her ability to do so at times. (R. 32). The claimant testified that her depression is always present; however, she sometimes experiences worse depression. The claimant testified that when she was fired in February 2009, her depression had worsened. (R. 34-35). The claimant asserted she was fired because her mental illness stopped her from performing her work duties. (R. 35). From February

2009 through the summer of 2009, the claimant stated her depression worsened; yet, the claimant testified that her depression became more manageable when the school year started again. The claimant expressed hope that she gets better every day. Although the claimant stated her depression is better than when she was fired in February 2009, she claims that she is not yet a "completed person." (R. 36).

The claimant testified that, in addition to her depression, her IBS is a disabling impairment. (R. 37). She stated that she believes that her IBS and depression are linked. The claimant testified that her IBS episodes start with abdominal pain that lead her to the bathroom where she sometimes passes out. (R. 37). The claimant testified that, during IBS episodes, she is nauseated and drained of her energy. (R. 37). The claimant stated that, because of her IBS causing severe abdominal pains, she visited the emergency room the morning of the hearing. When asked by the ALJ to describe what happens during her IBS episodes, the claimant stated that she keeps her hand in the sink; keeps a towel on her face; remains seated on the toilet; and keeps a bucket in front of her in which to throw up. The claimant testified that these episodes occur once a month on average. (R. 39).

The claimant stated that her hypertension and gastroesophagael reflux (GERD) are controllable with medication. (R. 40). The claimant testified that she has three children, and that she takes care of her home by doing laundry, making dinner, washing dishes, and vacuuming. (R. 41). The claimant stated that she avoids the grocery store because she has trouble making decisions. (R. 41). The claimant testified that she sweeps and reads but does not mop. In addition to reading, the claimant stated the she can watch and follow movies. (R. 41-42.). The claimant testified that she goes to church and has no difficulty doing so. Also, the claimant goes to her

children's sporting events. (R. 42-43).

The claimant testified that she gets along well with family and friends but that her IBS keeps her from strenuous activity. (R. 43). The claimant testified that she could walk or stand for two hours out of an eight hour day and that physical or mental impairments do not limit her ability to lift or carry objects. (R. 44). The claimant noted, however, that she was probably incapable of lifting more than ninety pounds.(R. 44). The claimant testified that when she experiences depression and IBS, she has difficulty bending, stooping, and squatting. (R. 45). The claimant stated that, since February 2008, she has had no problems with pain other than her IBS and that her IBS causes her pain once or twice every two weeks. (R. 45).

After the testimony described above, claimant's counsel asked the claimant questions. The claimant testified that she has migraine headaches that accompany her IBS; however, over the counter medication treats her migraine pain well. The claimant testified that she has to lay down every day for a couple of hours. (R. 48). The claimant stated that she experiences panic attacks—described as anxiety to the point of confusion—three to four times a month, on average, and additionally while at the grocery store. (R. 49-50).

The ALJ then questioned Dr. Mary Kessler, a vocational expert. Dr. Kessler testified that the claimant had previous work experience as a kindergarten teacher and a social worker; however, the claimant could not perform her past relevant work. (R. 52.) The ALJ asked Dr. Kessler hypothetical questions. First, the ALJ asked Dr. Kessler if an individual the same age, education, and work experience as the claimant and the residual functional capacity to perform simple tasks without significant restrictions could maintain gainful employment. Additionally for this first hypothetical, the ALJ asked Dr. Kessler to assume that the job would allow for a

flexible schedule; a spaced work setting; all allowable rest breaks; limited and casual contact

with the public; tactful and supportive supervision; and gradually introductions to changes in

routine or work setting. Dr. Kessler testified that such an individual under the described

circumstances could be a packer, packager, inspector, tester, assembler, or machine feeder. (R.

53.)

The ALJ then asked Dr. Kessler to take the hypothetical and add the limitation of only

being able to stand or sit for two hours out of the day. Dr. Kessler testified that such an individual

could work as a general office clerk, order clerk, production worker, or table worker. (R. 54).

Lastly, the ALJ asked Dr. Kessler to take all the previous limitations and then add the limitation

of having to miss two or more days of work per month. Dr. Kessler testified that such an

individual would not be able to maintain gainful employment.

*The ALJ's Decision*

On July 14, 2010, the ALJ issued her decision. The ALJ found that the claimant last met

the insured status requirements of the Social Security Act through June 30, 2011. (R. 15). The

ALJ found that the claimant had not engaged in substantial gainful activity since February 9,

2009, the alleged onset date of disability. (R. 15). The ALJ determined that the claimant had the

following severe impairments: bipolar disorder, panic disorder, IBS, migraine headaches, and

obesity. (R. 15). Additionally, the ALJ found that the claimant had a history of the following

medically determinable impairments: hypertension, GERD, and arthritis; however, given the lack

of supporting evidence in the record and the fact that the claimant did not claim hypertension,

GERD, and arthritis as severely limiting, the ALJ determined that they were not severe

impairments. (R. 15).

10

To support her conclusions regarding the claimant's severe impairments, the ALJ cited the claimant's history of depression, anxiety, and IBS. (R. 16). The ALJ stated the evidence of record confirms that the claimant lost her job in February 2009 because of excessive absences. Also, the ALJ stated that being fired exacerbated the claimant's symptoms of depression. The ALJ noted that the medical evidence of record indicated that the claimant's symptoms improved around September 2009. To support this statement, the ALJ specifically cited to records from Eastside Mental Health Center dated September 10, 2009 that mention an improved condition of the claimant. (R. 16). The ALJ additionally cited to records from Eastside Mental Health Center dated November 2, 2009 and January 14, 2010 to show improvement in the claimant's condition. These records indicated that the claimant continued to do well and was not experiencing panic attacks or crying spells. (R. 16).

The ALJ next found that the claimant's impairments did not meet the Listings. (R. 16). To support her conclusion, the ALJ noted that no treating, examining, or reviewing physician, nor the claimant herself, had suggested the existence of a Listing level impairment regarding her IBS. (R. 16). The ALJ also determined that the claimant's mental impairments considered singularly and in combination do not meet the Listings.

In reaching this decision, the ALJ utilized the analysis of the Psychiatric Review Technique. The ALJ determined that the claimant had a moderate limitation in activities of daily living. To support this conclusion, the ALJ cited the claimant's ability to prepare meals; take care of household chores; run errands; shop for groceries; and help her children with homework. The ALJ determined that the claimant had moderate difficult in social functioning. The ALJ supported this conclusion by citing the claimant's testimony that she attends church twice a

month and gets along well with friends and family. The ALJ found that the claimant has

moderate difficulties with concentration, persistence, or pace. To support this conclusion, the

ALJ first cited the claimant's testimony that, when depressed, she needs more time to accomplish

her usual routines. Also, the ALJ pointed to the fact that the claimant at times needs her husband

and mother to accomplish her daily routines. However, the ALJ found only moderate limitations

with concentration, persistence, or pace because the claimant testified that she enjoyed reading

and is able to watch a movie and follow it. Further, the ALJ concluded that the claimant has

experienced no episodes of decompensation. To support this conclusion, the ALJ noted that no

report or record indicated or mentioned episodes of decompensation. (R. 17).

Based on the mental impairment analysis above, the ALJ determined that the claimant did

not meet the 'paragraph B' criteria of Listing 12.06; further, the ALJ determined that the

claimant's mental impairment did not meet 'paragraph C.' To support her decision regarding

paragraph C, the ALJ stated that, to meet paragraph C, the claimant's mental impairments must

have resulted in a complete inability to function independently outside of her home. Given the

claimant's testimony regarding attending church and her children's sporting events, the ALJ

determined that the claimant could function independently outside her home. (R. 18).

The ALJ next found that the claimant had the following residual functioning capacity:

The claimant can perform simple tasks without significant restrictions. The claimant
requires a flexible schedule and a spaced work setting with all allowable rest breaks. The
claimant's contact with the public should be casual and limited, and supervision should
be tactful and supportive. The claimant has the ability to adapt to changes in the work
place that are routine or introduced gradually.

(R. 18).

In support of her RFC, the ALJ found the claimant's allegations of severe functional

12

limitations due to bipolar disorder and panic disorder inconsistent with the record. The ALJ pointed to the fact that the claimant's symptoms had been stable since September 2009 and that, as of her last mental health treatment in January 2010, the record reflected that the claimant was not experiencing any symptoms of depression. Additionally supporting her RFC, the ALJ discredited the claimant's allegations of migraine headaches and IBS. For both maladies, the ALJ stated that while the medical evidence confirmed that the claimant was diagnosed with the impairment, the record contained no evidence to support the frequency and severity of episodes of which the claimant complained. More specifically, the ALJ found the claimant's lack of medication for both her migraines and IBS inconsistent with the claimant's alleged frequency and severity of illness. (R. 19-21).

Continuing to support her RFC, the ALJ discussed the claimant's obesity. Though the ALJ found that no physician had labeled the claimant's obesity disabling, the ALJ considered whether it could affect the claimant's ability to work and perform activities of daily living anyway. The ALJ found that the record did not reflect that the claimant's obesity prevented her from ambulation or reaching, nor did her obesity prevent her from working or being able to complete a fairly full range of activities of daily living. Based on this finding, the ALJ determined that the claimant's obesity could not, either by itself, or in conjunction with the claimant's other impairments, be considered disabling. (R. 19-21).

In consideration of the claimant's credibility and as support for her RFC, the ALJ discussed the claimant's daily activities. The ALJ stated that the claimant testified that she was responsible for getting her three children to school. Also, the claimant prepares meals; does household chores; and maintains an active life, functioning well with medications and treatment.

The ALJ found that all of these activities undermined the credibility of the claimant's testimony regarding the severity of her impairments. (R. 19-21).

As the last portion of support for her RFC, the ALJ discussed the relevant opinions contained in the record. The ALJ afforded Dr. Estock, a non-examining State Agency medical consultant, considerable weight. The ALJ stated that Dr. Estock opined that the claimant could perform simple tasks without significant restrictions; that she needed a flexible work schedule; that she needed a well-spaced work setting; and that she needed all allowable rest breaks. Dr. Estock also noted that the claimant's ability to do detailed tasks could be limited at times by her mood problems.

The ALJ also considered the opinion of Dr. John Neville, an examining consultant psychologist. The ALJ afforded his opinion considerable weight. The ALJ stated that Dr. Neville found that the claimant "was able to understand instructions, but that her ability to carry out instructions was considered mildly to moderately impaired by her mood disorder. Dr. Neville also opined that the claimant's ability to respond to co-workers was good at times, but could decline when her mood reached extreme states and her ability to cope with ordinary work pressures would vary with the cycles of her illness."

Lastly, to support her RFC, the ALJ considered the third-party function report completed by the claimant's mother in May 2009. The ALJ found that the report supported the claimant's testimony that she had significant problems with her anxiety and bipolar disorder in May 2009. However, the ALJ found that, as indicated above, in or around August or September 2009, the claimant's condition improved significantly. (R. 21).

The ALJ then found the following: the claimant cannot perform her past relevant work;

14

the claimant was a younger individual on the alleged disability onset date; and the transferability

of the claimant's job skills is immaterial because she is not disabled. The ALJ found that the

claimant could perform jobs that exist in significant number in the national economy, such as a

packer, packager, inspector, tester, assembler, and machine feeder. Ultimately, the ALJ found

that the claimant was not disabled as defined by the Social Security Act. (R. 22-23).

## VI. DISCUSSION

The claimant makes a number of assertions that all revolve around whether the ALJ failed

to consider the cyclical nature of the claimant's mental impairments. By cyclical nature, the

claimant appears to refer to the fact that her symptoms worsen with the change in seasons and

that she is prone to flare-ups of worsened depression. For the reasons stated below, this court

finds no reversible error in the ALJ's opinion, and, thus, the ALJ's decision is due to be

AFFIRMED.

### I.      Whether the ALJ failed to consider the cyclical nature of the claimant's mental impairments.

The claimant asserts that the ALJ failed to properly consider the cyclical nature of her

mental impairment. To the contrary, the ALJ cited the cyclical nature of her mental impairment

directly in the claimant's RFC. The ALJ stated that "[i]n assessing the claimant's residual

functional capacity, . . . I have also considered the consultative examination performed by

licensed psychologist, John Neville, Ph.D, and afford his opinions considerable weight. . . Dr.

Neville . . . opined that the claimant's ability to . . . cope with ordinary work pressures would

vary with the cycles of her illness."

Tellingly, the claimant does not clarify what impact giving greater weight to the cyclical

nature of the claimant's impairments would have. Also, the claimant does not cite any case law to support her assertions. This lack of citation may stem from the fact that the Eleventh Circuit has clearly stated that opinions focusing on one aspect of evidence while ignoring other contrary evidence lack the support of substantial evidence. *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). Here, the ALJ properly considered and balanced the medical evidence both supporting and contradicting the cyclical nature of the claimant's mental impairments.

The ALJ's RFC stated that the claimant required "a flexible work schedule and spaced work setting with all allowable rest breaks," indicating that the claimant would need both space and time to deal with unforeseen episodes of her mental illness. Additionally, the ALJ considered contrary evidence to the cyclical nature of the claimant's impairments by citing to the claimant's own testimony that in or around August or September 2009 (*after* Dr. Neville's evaluation) the claimant's condition improved significantly. In terms of balancing these two pieces of slightly contrary evidence, the ALJ had to make a determination of which set of facts to adopt. Such "credibility determinations are the province of the ALJ." *See Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005). The ALJ cited to the record in support of her credibility determinations, pointing to the opinion of Dr. Neville and the testimony of the claimant herself. Therefore, this court finds no reversible error in the ALJ's credibility determinations.

In short, the Eleventh Circuit has charged both this court and the ALJ to look to the entirety of the record to make their respective determinations. However, based on the claimant's arguments, she would have this court and the ALJ improperly focus on one aspect of the record. Further, this court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, but rather, must give deference to the Commissioner's decision if substantial

16

evidence supports it.  *See Dyer v. Barhart*, 395 F.3d 1206, 1212 (11th Cir. 2005).  Given the ALJ looked to the entirety of the record and cited specific reasons for her decisions supported by substantial evidence, this court finds that the ALJ committed no reversible error in her consideration and treatment of the cyclical nature of the claimant's mental impairments.

Some of the claimant's assertions could be construed to allege that the ALJ improperly discredited the claimant's testimony. In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1225-56 (11th Cir. 2002); 20 C.F.R. § 404.1529. To the contrary, this court finds that the ALJ properly applied the three-part pain standard and articulated specific reasons supported by substantial evidence to support her decision.

In support of her assessment of  the claimant's credibility regarding her mental impairment testimony, the ALJ looked to the medical evidence, the testimony of the claimant, and the activities of the claimant. The ALJ specifically cited the 2010 Eastside Mental Health Center records to show that the claimant was not experiencing any symptoms of depression at the time of her visit. The ALJ also cited the claimant's testimony that she "is responsible for getting her three children off to school. She also prepares meals, and tends to the household chores." The ALJ also pointed to Eastside Mental Health Center records again to show that the claimant maintains an active life and "functions well with medication and treatment." The ALJ found that

17

these facts undermined the claimant's testimony regarding the severity of her symptoms. This court finds that the ALJ cited specific reasons supported by substantial evidence to discredit the claimant's testimony regarding her mental illness, and, thus, finds no reversible error.

In support of her assessment of the claimant's credibility regarding her physical impairment testimony, the ALJ again looked to the testimony of the claimant. While the ALJ acknowledged that the medical record indicated that the claimant was diagnosed with migraines and IBS, the ALJ noted that the claimant did not testify to having any prescriptions for her IBS or migraines. In fact, the claimant did not have any medication—prescribed or over the counter—for her IBS or migraines. The ALJ found the claimant's lack of medication inconsistent with the claimant's alleged frequency and severity of impairments. Given that the ALJ cited specific reasons supported by substantial evidence in discrediting the claimant's testimony regarding the severity of her physical impairments, this court finds no reversible error.

In sum, upon review of the totality of the record, this court finds that the ALJ properly applied legal standards and supported her factual conclusions with substantial evidence.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED.

The court will enter a separate order in accordance with this Memorandum Opinion.

Dated this 20th day of September, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

18